UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DAVID T. TAYLOR, | ) | Civil Action No.: 4:13-cv-1711-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CIRE, LLC and ERIC J. CAUSEY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

This action arises out of a sales agreement between Plaintiff and Defendants. Plaintiff asserts causes of action for breach of contract and breach of promissory note. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Presently before the court is Plaintiff's Motion for Summary Judgment (Document # 32). Defendants timely filed a response. Subsequently, counsel for Defendants requested to be and was relieved as counsel. Defendant Eric Causey was directed to inform the court of his intent to retain counsel or proceed pro se within thirty days of the order relieving counsel. Defendant Cire, LLC was notified that it could not represent itself as a corporate entity and was directed to retain counsel within the same period of time. Neither party has retained counsel.

A notice of hearing on the present motion was entered on January 16, 2015, setting a hearing for January 28, 2015, and reminding Defendant Cire, LLC that, as a corporate entity, it could not represent itself and must retain new counsel, and warning Cire, LLC that a failure to obtain counsel could result in a recommendation that default judgment be entered against it. Counsel for Plaintiff, Gerald Meek, Esq., was present at the hearing. Neither Causey nor any representation, legal or otherwise, for Cire, LLC appeared at the hearing. Thus, it appears that both Defendants have abandoned their defense of this action.

All pretrial proceedings were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e). This report and recommendation is entered for review by the district judge.

## II.     FACTS

Until approximately May of 2011, Plaintiff David Taylor operated a business in Florence, South Carolina under the name Palmetto Hydraulic Engineering. Pl. Aff. ¶ 4 (Ex. to Pl. Motion). On May 12, 2011 Plaintiff entered into a sales agreement with Defendants. Pl. Aff. ¶ 4; Sales Agreement (Ex. to Pl. Aff.). In the sales agreement, Plaintiff agreed to sell Defendants substantially al of the assets of the business for $96,000. Id.. However, the asset list included in the sales agreement did not include all of the assets of which Defendants took ownership. Pl. Dep. 150 (Ex. to Def. Response). Defendants agreed to make a down payment on May 13, 2011, in the amount of $45,000. Sales Agreement. The remainder of the $96,000 was to be paid pursuant to a promissory note, signed by Defendant Causey. Id. Plaintiff testified that hundreds of emails and verbal dealings took place during the preparation of the sales agreement. Pl. Dep. 153-54.

On May 16, 2011, Defendant Causey signed a promissory note promising to pay Plaintiff the sum of $51,000. Pl. Aff. ¶ 5; Promissory Note (Ex. to Pl. Aff.). Payment of the promissory note was to be made in thirty-five equal monthly installments of $1,416 and one final payment of $1,411. Id. The promissory note also provided that

a.  Payments not made within 15 days of the due date would be subject to a late charge of 2% of said payment; and

b.  Causey would be liable for any costs, including attorneys' fees and court costs, incurred for the collection of amounts not paid when due.

Id.

On May 19, 2011, Plaintiff received a check from Causey in the amount of $45,000 for the down payment. Pl. Aff. ¶ 6. The check was returned unpaid for insufficient funds. Id.; Causey Dep. 43 (Ex. to Pl. Motion). As of the filing of the present motion, the $45,000 had not been paid. Pl. Aff. ¶ 6.

Through email communications dated October 31, 2011, and November 4, 2011, Plaintiff agreed to sell Defendants a Ticino lathe and tooling for $20,000.[1] Pl. Aff. ¶ 7. Defendants took possession of the Ticino lathe and tooling. Id. Defendant Causey and Plaintiff agreed that, if Causey immediately paid $20,000 of the previously agreed upon $45,000 down payment for the assets of the business, Plaintiff would permit Causey to make monthly payments in the amount of $3,000 for thirty-one months, on the remaining balance due under both the May 12, 2011, sales agreement and the agreement to sell the Tocino lathe and tooling. Id. However, neither Causey nor Cire, LLC paid the agreed upon $20,000, which was a condition to restructuring the payments. Id.

As of the filing of the present motion, Plaintiff had received the following payments from Causey and/or Cire, LLC pursuant to the above referenced agreements:

a. $1,416 on June 16, 2011;

b. $1,416 on July 14, 2011;

c. $1,416 on August 15, 2011;

d. $4000 on June 25, 2012;

e. $6,000 on August 22, 2012.

---

[1] This number is in dispute. In his affidavit, Plaintiff avers that the agreed upon amount was $24,000. Pl. Aff. ¶ 7. Causey does not "remember the exact number," but recalls that it was "right around $20,000." Causey Dep. 91. However, at the hearing, Plaintiff conceded that, in the light most favorable to the non-moving party, the amount was $20,000, and he agreed to move forward with this amount.

Pl. Aff. ¶ 8. Plaintiff also received checks on September 15, 2011, October 15, 2011, and December 27, 2011, in the amounts of $1,416 each, but the checks were returned for insufficient funds. Pl. Aff. ¶ 9. Plaintiff asserts that the balance due and owing on the May 11, 2011, sales agreement is $81,752, which includes an outstanding principal balance of $36,752 on the promissory note. Pl. Aff. ¶ 11. Plaintiff asserts that the balance due and owing on the Ticino lathe and tooling is $20,000. Id.

Counsel for Plaintiff submitted an affidavit, indicating that Plaintiff had incurred attorney's fees in the amount of $9,850. Meek Aff. ¶ 4 (Document # 72). He avers that he has expended a total of 56 hours on this litigation at a rate of $250 per hour, but has not charged Plaintiff attorney's fees for 16.6 hours of travel time. Meek Aff. ¶ 4. Mr. Meek also avers that Plaintiff has incurred expenses totaling $2,086.78, including the filing fee of $400, a service of process fee of $30, court reporter fees of $1,278.10 and counsel travel fees of $378.68. Meek Aff. ¶ 5.

## III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.    DISCUSSION**

In an action for breach of contract, a plaintiff has the burden of proving the existence of a contract, its breach, and damages caused by the breach. Maro v. Lewis, 389 S.C. 216, 222, 697 S.E.2d 684, 688 (Ct.App.2010). It is undisputed that Defendants entered into a sales agreement and related promissory note with Plaintiff for the sale of assets in the amount of $96,000, including a $45,000 down payment and 35 equal monthly installments of $1,416 with one final payment of $1,441. It is further undisputed that Defendants entered into an agreement with Plaintiff to purchase a Ticino lathe and tooling. Defendant Causey fails to present sufficient evidence to dispute this

amount.

As set forth above, it appears that Defendants have abandoned their challenge to Plaintiff's claims. However, in the memorandum in opposition filed by Defendants' former counsel, they argue that summary judgment is not appropriate because the contracts at issue are ambiguous. The question of whether a contract is ambiguous is a question of law. Lee v. Univ. of S.C., 407 S.C. 512, 517, 757 S.E.2d 394, 397 (2014). A contract is ambiguous when it is capable of more than one meaning or when its meaning is unclear. Ellie, Inc. v. Miccichi, 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct.App.2004). Defendants assert that the sales agreement is ambiguous because it does not contain a complete list of the assets being purchased by Defendants and, thus, they would have to go beyond the documents to find the parties intentions of what assets were exactly being bought and sold. However, Defendants do not argue that they actually had such a dispute. Thus, Defendants fail to show how this alleged ambiguity is material to the issue before the court.[2] They do not argue that Plaintiff failed to perform his duty under the contract to transfer ownership of certain assets in exchange for payment by Defendants. Thus, the undisputed evidence before the court is that Plaintiff agreed to sell to Defendants certain assets and Defendants failed to perform their duty under the sales agreement to pay one down payment of $45,000, thirty-five monthly payments of $1,416 and a final payment of $1,441.

In addition, it is undisputed that Plaintiff agreed to sell to Defendants a Ticino lathe and tooling. Defendants argue that this second contract is nothing more than a few ambiguous emails

---

[2] Defendant Causey does mention in his deposition, that he had discussions with Plaintiff about receiving only one welder as opposed to two. Causey Dep. 36. However, two welders were specifically listed in the invoice attached to the sales agreement and, thus, to the extent two welders were not delivered to Defendants, it was not the result of an ambiguity in the contract. Further, Defendants do not argue that they did not ultimately receive all of the assets they agreed to purchase under the sales agreement.

exchanged between the parties. However, they do not dispute that they agreed to purchase the Ticino lathe and tooling. Further, although the emails do not clearly set forth an amount, Plaintiff does not dispute the amount of $20,000 as represented by Causey in his deposition. It is further undisputed that Defendants failed to perform their duty under this agreement. As such, no genuine dispute of fact exists with respect to this agreement.

Defendants next argue that, although Plaintiff contends that he sold the subject assets to Defendants free from any interests by third-parties, the evidence shows otherwise, citing to subpoena responses from PARC Management. See Affidavits of Records Custodian (Document # 26).[3] Defendants' memorandum in opposition to summary judgment fails to address these documents and how they are relevant to their failure to perform under the above agreements. Again, Defendants have abandoned their defense, but even considering the written opposition to summary judgment filed by their former counsel, they fail to create a genuine dispute of fact with respect to the issues presented in this case.

Finally, as stated above, Plaintiff has incurred attorney's fees of $9,850 and expenses totaling $2,086.78. A provision in the promissory note signed by Causey provided that he would be liable for any costs, including attorneys' fees and court costs, incurred for the collection of amounts not paid when due. To determine whether a requested amount of attorney's fees is reasonable, the court should multiply the number of hours reasonably expended by counsel by a reasonable hourly rate.

---

[3] The documents were provided to Defendants by PARC Management in response to Defendants' subpoena, requesting "a complete copy of any and all documents or tangible things of any description whatsoever, electronic or otherwise, that relate to materials, services, and/or money owed by David Taylor or any of his companies as well as Eric Causey's Cire, LLC's and/or Phoenix Hydraulic Engineering's supply of materials, services, and/or payment to you or your companies on behalf of David Taylor or any of his companies." The documents produced include invoices and print-outs showing amounts paid.

In determining reasonableness, the court shall consider the twelve factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir.1978). Those twelve factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." Barber, 577 F.2d at 226.  A number of the factors may not be applicable in a particular case and, thus, need not be strictly applied. See E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir.1990).  The undersigned finds that the time and labor expended support counsel's claim for attorney's fees and that the fees are reasonably related to the fairly straight-forward breach of contract claims raised in the complaint and the skill necessary to litigate such claims.  Counsel is admitted to practice in six states and has been a member of the bar of this state since 1998, Meek Aff. ¶ 2, and, thus, the fees are reasonable in light of his experience and ability.  In addition, the fees incurred are reasonable in light of the amount in controversy ($101,752) in this action. Finally, based upon the undersigned's knowledge of the rates for work of this type in this district as well as fee awards in similar cases, counsel's hourly rate of $250 is reasonable as well.

    In sum, the undisputed evidence shows that agreements existed between Plaintiff and Defendants, Defendants breached those agreements and Plaintiff has suffered damages as a result. Under the sales agreement and related promissory note, Defendants agreed to pay $96,000.  Under the Ticino lathe and tooling agreement, Defendants agreed to pay $20,000.  Thus, Defendants have

-9-

incurred a debt to Plaintiff totaling $116,000. Defendants have paid a total of $14,248 towards that debt. Further, pursuant to the promissory note provision that Causey will be liable for the attorney's fees and costs associated with the collection of amounts not paid, he is responsible for costs and fees totaling $11,936.78. Thus, Defendants owe Plaintiff $113,688.78 under the agreements set forth above.

**V.    CONCLUSION**

For the reasons discussed above, it is recommended Plaintiff's Motion for Summary Judgment (Document # 32) be granted and judgment be entered in favor of Plaintiff in the amount of $113,688.78.

                                                  s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

January 29, 2015
Florence, South Carolina

**The parties are directed to the important notice on the following page.**